PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BEN CARTE, | ) | |
| | ) | CASE NO. 5:24-cv-00942 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| NORFOLK SOUTHERN RAILWAY CO., | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 57] |

Plaintiff Ben Carte, a former employee of Defendant Norfolk Southern Railway Co., brought this action against Defendant alleging claims of disability discrimination under the Americans with Disabilities Act ("ADA") and the Ohio Fair Employment Practices Act ("OFEPA"). The claims are now before the Court on Defendant's Motion for Summary Judgment (ECF No. 57). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, Defendant's motion is granted.

## I. Stipulated Facts[1]

1. [Defendant] is a freight railroad company operating approximately 19,500 route miles in twenty-two states, including Ohio.

2. [Plaintiff] was hired on October 2, 2012 and was employed by [Defendant] as a track laborer/trackman until January 10, 2023.

3. [Plaintiff] was, at all relevant times, a member of the Brotherhood of Maintenance of

---

[1] The Parties stipulate to the following facts. ECF No. 56.

Way Employees ("BMWE"), a union whose members are employed under a Collective Bargaining Agreement ("CBA") between [Defendant] and the BMWE.

4. Throughout his employment[,] [Plaintiff] bid on and was awarded positions in traveling "Gangs" that perform maintenance on the rail line.

5. On December 8, 2021, [Plaintiff] was working for Gang R-12 replacing rail in Reed, Pennsylvania, when he was involved in a workplace accident resulting in the death of another individual.

6. The accident was investigated by [Defendant], the Federal Railroad Administration and the National Transportation Safety Board and [Plaintiff] received no discipline or reprimand of any kind related to the accident.

7. In August 2022, [Plaintiff] was working as a Rail Anchor Machine Operator with the R-Gang.

8. [Plaintiff]'s supervisor in August 2022 was Christoper Long (Supervisor R-8).

9. On September 2, 2022, [Plaintiff] received a letter via certified mail from his Supervisor and copied to representatives of the BMWE stating the following:

> You are hereby notified to report at 9:00 AM EST on September 13, 2022 at a location to be determined for a formal investigation to determine your responsibility, if any, in connection with:
>
> "Conduct unbecoming an employee in that on August 20, 2022 supervision discovered that you made inappropriate, violent, and/or threatening remarks directed at other employee(s) on or about August 18, 2022."
>
> You are held from service pending the outcome of the formal investigation.
>
> At the hearing you shall have the right to be represented by an organization representative(s) of your own choosing in accordance with your working agreement. You and/or your representatives(s) shall have the right to introduce witnesses in your behalf, to hear

> all testimony introduced, and to question all witnesses. If you desire any other witnesses who may provide material facts, please furnish their names as soon as possible.[2]

10. [Plaintiff] appeared for the "formal investigation" or "hearing" described in the September 2, 2022 letter (which was rescheduled to December 21, 2022).

11. On January 10, 2023, [Plaintiff] received a letter via certified mail from his Supervisor and copied to representatives of the BMWE stating as follows:

> In reference to the formal investigation held December 21, 2022 at 8:00 AM EST at Holiday Inn, 6001 Rockside Road, Independence, OH 44131, to determine your responsibility, if any, in connection with the following:
>
> "Conduct unbecoming an employee in that on August 20, 2022 supervision discovered that you made inappropriate, violent, and/or threatening remarks directed at other employee(s) on or about August 18, 2022."
>
> As a result of the facts which were brought out in this investigation, you are hereby dismissed in all capacities from Norfolk Southern. Please make arrangements to return all company property in your possession as soon as possible.[3]

12. Pursuant to his rights under the CBA, on [Plaintiff]'s behalf, the BMWE grieved the termination of his employment to a Public Law Board ("PLB" or the "Board") under the Railway Labor Act.

13. On December 3, 2024 the PLB found *inter alia* as follows:

> Carrier's determination that Claimant was guilty of the charges brought against him is supported by substantial evidence. All four passengers that rode in the van with the Claimant on that afternoon submitted written statements attesting that he made disturbing comments.

---

[2] Plaintiff stipulates to this description of the letter, not the letter's description of the facts.

[3] Plaintiff stipulates to this description of the letter, not the letter's description of the facts

> With regard to the quantum of discipline assessed, the Board finds that given the particular facts in this matter that dismissal was excessive. All of Claimant's coworkers that submitted written statements expressed the need to get their co-worker help. Instead, Carrier determined to dismiss him. Evidence on this record shows that Claimant has taken it upon himself to seek the help that he needed. Claimant will therefore be returned to service, without compensation for time out of service, subject to evaluation and approval of Carrier's Medical Services.

14. On December 18, 2024, Norfolk Southern Health Services ("NSHS") sent [Plaintiff] an email stating that Health Services needed medical records to continue processing his return to work. On February 21, 2025, NSHS sent another email seeking mental-health/PTSD office-visit notes and other information.

15. [Plaintiff] did not provide NSHS all documents requested in the December 18, 2024 or the February 21, 2025 NSHS communication. [Plaintiff] disputed [Defendant]'s entitlement to the requested mental-health information.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact

exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is *material* only if its resolution will affect the outcome of the lawsuit. *Id*. (emphasis added).

To determine whether a factual issue is *genuine*, the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *See id*. (emphasis added); *see also, Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013) (finding that, "a genuine issue for trial exists where reasonable minds could differ on a material fact.") (citation omitted). To withstand summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Kleeper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). When there is a genuine dispute of any material fact, summary judgment is inappropriate. *Henschel*, 737 F.3d at1022. The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id*. Failure on behalf of the non-moving party to make a sufficient showing on any element of the case means all other facts are deemed immaterial. *Celotex*, 477 U.S. at 322.

## III. Discussion

Defendant moves for summary judgment on three grounds: (1) that Plaintiff cannot establish that his termination was discriminatory under ADA or the OFEPA; (2) Defendant did not discriminate against Plaintiff because of his PTSD (under the ADA or OFEPA) when Defendant requested medical records; and (3) the direct threat defense applies. ECF No. 60 at PageID #: 615. Plaintiff challenges the motion, arguing that: (1) he can prove the elements of his disability discrimination claim; (2) Defendant requested too much information regarding his

medical records; and (3) Defendant has not established its direct threat defense. ECF No. 61 at PageID ##: 881–90.

**A. Legal Standard for ADA and OFEPA**

Recovery under the ADA and OFEPA[4] requires plaintiff to show: "(1) [plaintiff] is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." *Ferrari v. Ford Motor Company*, 826 F. 3d 885, 891 (6th Cir. 2016). Parties can establish these elements by either direct or indirect evidence. *See id*. (explaining that "[a] plaintiff may do so "by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, or by introducing indirect evidence of discrimination."") (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)) (citation omitted).

When the direct evidence method is used, the elements are those mentioned above. *See id*. If Plaintiff establishes the elements, "the employer bear[s] the burden of proving that a challenged job criterion is essential … or that a proposed accommodation will impose an undue hardship upon the employer." *Id*. (quoting *Monette*, 90 F.3d at 1186).[5]

The elements for the indirect evidence method are those above with two additional elements: (4) that the employer knew or had reason to know of plaintiff's disability; and (5) the

---

[4] The analysis for both the ADA and OFEPA are the same. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007)).

[5] An example of direct evidence is "when an employer acknowledges that it relied upon the plaintiff's handicap in making its employment decision." *Ferrari*, 826 F.3d at 892 (quoting *Monette*, 90 F.3d at 1184) (internal quotations omitted).

position remained open while the employer sought other applicants or the disabled individual was replaced. *Id.* at 891–92. When the indirect evidence method applies to an ADA discrimination case, the *McDonnell Douglas* burden-shifting framework also applies. *See id.*; *see also, Monette*, 90 F.3d at 1179–82; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (providing the burden-shifting framework).

If plaintiff establishes a *prima facie* case under the indirect method, the burden then shifts to defendant, who is required to "offer a legitimate explanation for its action." *Monette*, 90. F.3d at 1186. If defendant meets its burden, the burden shifts back to the plaintiff, who "must introduce evidence showing that the proffered explanation is pretextual." *Id*. A plaintiff can show pretext in three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's actions, or (3) that they were insufficient to motivate the employer's action." *Romans v. Michigan Dept. of Human Services*, 668 F.3d 826, 839 (6th Cir. 2012) (quoting *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). A defendant can overcome a plaintiff's claims of pretext "if it is able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Romans*, 668 F.3d at 839 (quoting *Wright v. Murray Guard Inc.*, 445 F.3d 702, 707–08 (6th Cir. 2006)) (internal quotation omitted).

In the instant case, Plaintiff has not presented direct evidence of discrimination under the ADA or OFEPA. When the Court analyzed the record using the indirect evidence method, it found that all the elements required for Plaintiff to establish a *prima facie* case are genuinely in dispute except whether he was qualified to perform the essential functions of the position. The Court need not discuss the disputed elements, however, because the direct threat defense is dispositive. It renders Plaintiff unqualified for his position.

**B. Direct Threat Defense**

A person is not qualified for his position of employment when he "poses a 'direct threat' to the health or safety of others which cannot be eliminated by a reasonable accommodation." *Michael v. City of Troy Police Dept.*, 808 F.3d 304, 307 (6th Cir. 2015).[6] When the direct threat defense applies, it destroys the *prima facie* case for ADA discrimination. *See* 42 U.S.C. §§ 12111(3); 12113(b); *Smith v. Newport Utilities*, 129 F.4th 944, 949–51 (6th Cir. 2025). The Sixth Circuit has established that a disabled individual is not qualified for employment when he poses a direct threat of harm. *Newport Utilities*, 129 F.4th at 950. Ideally, to resolve the question of whether an employee poses a direct threat, an employer should "conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on the individual's ability to perform the job in question." *Wurzel v. Whirlpool Corp.*, 482 Fed.Appx. 1, at *12 (6th Cir. Apr. 27, 2012) (citing *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000)).

> The determination that an individual poses a direct threat shall be based on an individual assessment of the individual's present ability to safely perform the essential functions of the job. *This assessment shall be based on a reasonable medical judgment that relies on the most current knowledge and/or on the best available objective evidence.* Relevant factors include (i) the duration of the risk; (ii) the nature and potential severity of the potential harm; (iii) the likelihood that the potential harm will occur; and (iv) the imminence of the potential harm.

---

[6] The ADA defines a direct threat as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. §§ 12111(3).

*Holiday*, 206 F.3d at 647 n. 4 (citing 29 C.F.R.1630.2(r)) (internal quotations omitted) (emphasis added).

The Court must assess "the objective reasonableness of [the employer's] actions. *Michael*, 808 F.3d at 307 (citation omitted). "[A]n employer's [decision] is objectively reasonable when [based] on [] medical opinion that is objectively reasonable." *Id*. "An employer need not rely on a medical opinion, however, to determine that a person poses a direct threat. Rather, testimonial evidence concerning the employee's behavior can provide sufficient support for a direct threat finding under the ADA." *Id*. (citing *EEOC v, Amego, Inc*., 110 F.3d 153, 141 (1st Cir. 1997)) (relying on behavioral evidence alone to determine that Plaintiff posed a direct threat) (internal citations omitted). Ultimately, the Court's "analysis . . . [entails] one question: Did [the plaintiff's] activities [at his job] pose a direct threat or significant risk to the health or safety of others?" *Wurzel*, 482 Fed.Appx. 1, at *12 (internal citations omitted).

Defendant argues that Plaintiff posed a direct threat because there was a risk that he would "violently attack his coworker, as he specifically threatened to do." ECF No. 60 at PageID ##: 620–22. "Plaintiff threatened to bring a gun to work and shoot everyone or make a bomb to blow everyone up." ECF No. 62 at PageID #: 903. Defendant investigated this threat by collecting statements from multiple witnesses. ECF No. 60 at PageID ##: 621–22. These witnesses explained that they felt unsafe and, at least one, considered not coming to work, because of Plaintiff's threats. ECF No. 60 at PageID #: 622. Nevertheless, Plaintiff argues that Defendant did not conduct a thorough investigation because Defendant did not use "reasonable medical judgment." ECF No. 61 at PageID #: 888. Plaintiff contends because Defendant "skipped over the required analysis, [Defendant] cannot prove [direct threat]." ECF No. 61 at PageID #: 888. The Court is unpersuaded by Plaintiff's argument.

It is undisputed that Plaintiff did not provide Defendant with requested medical documentation, although Defendant asked for the documentation more than once.[7] These unrequited requests included information pertaining to Plaintiff's mental health. As a result, Defendant did not have access to documentation that Plaintiff now contends was necessary for an improved direct threat analysis. The lack of medical documentation has no preclusive effect because Defendant had sufficient evidence to objectively conduct a direct threat analysis and to conclude that Plaintiff posed a direct threat, if he continued to be employed.[8] While unable to assess the imminence of the threat or even the duration of its risk, Defendant through Plaintiff's own words and the reactions of his coworkers, objectively determined that Plaintiff posed a threat and that his threats created fear among his coworkers. The Court, therefore, agrees with Defendant's assessment. That is: given the threat of physical harm that Plaintiff posed to his coworkers, he was unqualified for his job with Defendant.

After having been found unqualified for his employment because he posed a direct threat, Plaintiff now contends that an accommodation would have removed the direct threat, ECF No. 61 at PageID ##: 887–88, and that Defendant's medical records request was overly broad, ECF No. 61 at PageID ##: 887–88, 890–92. The Court addresses these in turn. First, when an employee fails to request accommodation, the employer is not required to provide one. *See Parson v. Auto Club Group*, 565 Fed. Appx. 446, 448–49 (6th Cir. 2014). Plaintiff presents an argument in his opposition to summary judgment that he did not plead. *See* ECF No. 60 at

---

[7] *See* Stipulated facts agreeing that Plaintiff disputed Defendant's entitlement to the requested mental health information. ECF No. 56 at ¶ 15.

[8] Even the regulation on which Plaintiff relies allows the use of "medical judgment" or "the best available objective evidence". ECF No. 61 at PageID #: 888; 29 C.F.R.1630.2(r).

PageID #3: 614–15 n. 3. He did not request an accommodation. ECF No. 60-19 at PageID ##: 864–65 (conceding that he "was held out of service before he could make an accommodation request."). Regarding the second point, Defendant requested records regarding Plaintiff's mental health that covered a limited period of time and scope.[9] Plaintiff's refusal to provide the requested records makes it hard for him to show that accommodation would have been possible (had he sought one). Moreover, he deprived Defendant of information that may have informed its decision-making regarding a possible accommodation.

## IV. Conclusion

Viewing the probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, and considering that presented by Defendant, the Court concludes that Defendant is entitled to a judgment as a matter of law, because Plaintiff posed a danger, and, therefore, was not qualified for his position. Defendant's Motion for Summary Judgment (ECF No. 57) is granted. Final judgment will be entered in favor of Defendant.

IT IS SO ORDERED.

October 30, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge

[9] Therapist notes were excluded, for example. The remaining requests were job-related and consistent with business necessity.